UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SARAH JOYCE-RENEE FISH,

     Plaintiff,            CIVIL ACTION NO. 11-15688

vs.

                          DISTRICT JUDGE LAWRENCE P. ZATKOFF

COMMISSIONER OF           MAGISTRATE JUDGE MONA K. MAJZOUB
SOCIAL SECURITY,

     Defendant.
_____/

## REPORT AND RECOMMENDATION

**I.     RECOMMENDATION:** This Court recommends that Plaintiff's motion for summary judgment (docket no. 10) should be denied, Defendant's motion for summary judgment (docket no. 11) should be granted, and Plaintiff's complaint be dismissed.

**II.    PROCEDURAL HISTORY:**

Plaintiff filed an application for supplemental security income on February 19, 2008, alleging disability beginning January 1, 2006. (TR 125-29). The Social Security Administration denied benefits and Plaintiff filed a timely request for a *de novo* hearing. On July 13, 2010 Plaintiff appeared with counsel and testified at a hearing held before Administrative Law Judge (ALJ) Lawrence E. Blatnik. (TR 45-81). Vocational Expert (VE) Norman Abeles also appeared and testified at the hearing. In a November 12, 2010 decision the ALJ found that Plaintiff was not entitled to disability benefits because the evidence showed that there were a significant number of jobs existing in the national economy that Plaintiff could perform. (TR 26-36). The Appeals Council declined to review the ALJ's decision and Plaintiff filed a timely complaint for judicial

1

review. The parties filed cross motions for summary judgment which are currently before the Court.

## III. PLAINTIFF'S TESTIMONY AND MEDICAL EVIDENCE

### A. Plaintiff's Testimony

Plaintiff was thirty-six years old at the time of the administrative hearing. She lives with her husband and two children, ages fifteen and ten. (TR 51). Plaintiff states that she has a driver's license and she drives her children to school every day, but claims she is not able to drive long distances. She earned a high school diploma and completed one year of college. (TR 52-53). Plaintiff testified that her past employment includes work as a home health aide, an aide in an adult foster care home, a job coach at Goodwill, a telemarketer, and a cashier and stock person. (TR 53-55).

Plaintiff testified that she is unable to work due to fibromyalgia that affects her arms, shoulders, and back. She complains of aches and pains in her knees, hips, hands and back. (TR 56-59, 69). She testified that she is five foot eight inches in height and weighs in excess of 373 pounds. (TR 50). Plaintiff rates her typical pain level as a five to six on a ten point scale, and as a level nine to ten on bad days. (TR 69). She testified that she has had positive results from physical therapy and she has not had any surgeries or mental health treatment. (TR 62). Plaintiff testified that she needs help dressing, as she is unable to put on her bra, shoes or socks without assistance. (TR 63). She claims that she prepares household meals, assists with household cleaning, folds laundry, grocery shops, and carries light grocery bags into her home. (TR 63-64). She uses a computer approximately three times per week. (TR 64-65). She also attends her children's sports and after-school activities, including track, softball, and basketball games and band concerts. (TR 65). She participated on a bowling league with her husband up until September 2008. (TR 66).

Plaintiff testified that she takes Skelaxin and Cymbalta which help control her symptoms but cause her to be tired. (TR 60-61, 67). She reports that she can walk less than one block at a time before needing to rest, stand fifteen to twenty minutes at a time, and sit approximately twenty minutes before needing to get up and move around. (TR 61). She testified that she has four to five bad days a month when she is unable to get out of bed due to pain. (TR 67). She testified that she can lift or carry five to ten pound objects across a room, bend at the waist but not to the floor, she is unable to stoop or squat, and she has difficulty climbing stairs. (TR 61-62).

**B.     Medical Evidence**

The undersigned thoroughly reviewed Plaintiff's medical record and will summarize limited portions of the record below as it relates to Plaintiff's physical condition only. The medical record reveals that Plaintiff has a history of right shoulder tendinitis, asthma, degenerative disc disease of the cervical spine, bilateral shoulder pain, mild diffuse disc osteophyte, and fibromyalgia. (TR 213, 285, 287, 303).

In February 2006 Plaintiff was issued a thirty-day prescription for physical therapy to treat right shoulder tendinitis and assessed with a five pound weight restriction. (TR 213). The prescription was renewed in March 2006 and again from July to September 2006. (TR 213-17). During her initial physical therapy evaluation, Plaintiff presented to therapist Wennie Gorowski with complaints of severe right shoulder pain and difficulty raising her right arm particularly with dressing, lifting, carrying, reaching cupboards, and housekeeping. (TR 218). Plaintiff estimated that her pain fluctuated between a level two and a level eight on a ten point scale. She had active full range of motion to the right shoulder with pain at the end of full range of motion. The therapist determined that Plaintiff's rehabilitation potential was very good.

3

During the March 2006 physical therapy assessment with Wennie Gorowski, Plaintiff reported that she was having positive results with physical therapy and her right shoulder was improving. (TR 220). The therapist noted that there were no limitations to motion of the right shoulder with active motion, and only minimal pain at the full end-range of motion in abduction, flexion, and internal rotation in full range of motion. She noted decreased tenderness to the anterior and lateral aspect compared to the initial evaluation, a slight improvement with internal rotation and external rotation, and an increase of strength to the right shoulder musculatures. Subsequent physical therapy sessions between July and September 2006 showed that Plaintiff continued to make good improvement toward her physical therapy goals, except that she continued to report pain with housekeeping, carrying, and lifting, and she reported increased pain in her right shoulder after bowling. (TR 221-29). Plaintiff was given a ten pound weight restriction. (TR 221). She was discharged from physical therapy in September 2006 with a good prognosis and instructions to continue her exercises at home. (TR 236).

Plaintiff received additional physical therapy treatment in March and April 2007, this time for left shoulder pain. (TR 244-47, 251-55). Plaintiff reported level three to four pain in her left shoulder when reaching overhead, housekeeping, and lifting. (TR 253). Range of motion of the left upper extremity was within normal limits. Plaintiff reported good progress with physical therapy and it was noted that she was independent in her activities of daily living, although she was having some difficulties with dressing, housekeeping, and overhead reaching. (TR 251, 253). In February 2007 Marilyn Rendel, MSPT evaluated Plaintiff's disabilities and documented that Plaintiff had severe difficulty placing an object on an overhead shelf, doing heavy household chores, and washing her back; and she had moderate difficulties pushing open a heavy door, doing yard work, making

4

a bed, changing an overhead lightbulb, washing her hair, and performing certain recreational activities. (TR 248). Marilyn Rendel documented that Plaintiff had moderate arm, shoulder or hand pain, mild pain when she performed a specific activity, and mild weakness in her arm, shoulder or hand with no tingling. (TR 249). Despite her pain complaints, Plaintiff reported only mild difficulty performing her work and using her usual techniques for work, and no difficulty doing her work as well as she would like or spending her usual amount of time at work. (TR 250). The therapist documented that Plaintiff was making moderate progress toward her physical therapy goals with a reported forty percent improvement in her left shoulder. (TR 255).

On July 13, 2006 Dr. Bachmeyer wrote Plaintiff a prescription stating that she could return to work with a restriction of no greater than ten pounds pushing, pulling or lifting. (TR 323). She was given clearance to return to work without restrictions as of February 22, 2007. (TR 399).

In June 2007 Dr. Martin Buckingham of Michigan Brain & Spine evaluated Plaintiff and noted that she had full range of motion of her neck, she could fully abduct her arm, she had good power over her arm abductors, biceps, brachioradialis, triceps, wrist extensors, finger extensors and hand grasp. (TR 371). Dr. Buckingham noted that Plaintiff's MRI of the cervical spine demonstrated only very mild changes at C5-6 with a tiny protrusion centrally at 5-6 with no evidence of cord or root impingement. The doctor concluded that Plaintiff's shoulder symptoms were related to cervical spondylosis and noted that surgery was not indicated.

In February 2008 Plaintiff presented to Dr. Angela Gupta at Ann Arbor Rheumatology on a referral from Dr. Bachmeyer for new onset fibromyalgia. (TR 389). Dr. Gupta noted that Plaintiff had normal range of motion of all her joints, and several positive fibromyalgia trigger points mostly in the upper extremities and upper torso. She determined that Plaintiff had a component of

fibromyalgia. (TR 277-78). In March 2008, Dr. Gupta documented that Plaintiff had probable fibromyalgia, but noted that she was still in the process of ruling out other underlying conditions. (TR 372). The doctor reported that Plaintiff did not start taking Elavil as it was suggested she do or obtain recommended blood tests. Dr. Gupta documented that it was very important to rule out sleep apnea and obtain basic labs to rule out other possible underlying conditions.

In April 2008 Dr. Tama Abel evaluated Plaintiff on behalf of the state disability determination service. (TR 303-05). Dr. Abel documented that Plaintiff was diagnosed with fibromyalgia in January 2008. She noted that Plaintiff had thirteen standardized tenderpoint sites of the eighteen possible sites for fibromyalgia. The doctor reported that Plaintiff was generally independent with her activities of daily living and was able to prepare meals and do housework although not without pain. Plaintiff was observed to have full fist with full grip bilaterally with excellent pincher grasp, unimpaired dexterity, and full range of motion of all joints. She was able to pick up a coin and button clothing, but she had mild difficulty getting on and off the examination table, mild difficulty heel and toe walking, mild difficulty balancing, and she was unable to squat and arise. Plaintiff was able to stoop to pick up an object from the floor holding onto a stable object. She was observed to walk with a normal gait without the use of an assistive device.

On May 28, 2008 Dr. William Jackson completed a Physical Residual Functional Capacity Assessment. (TR 307-14). Dr. Jackson noted that Plaintiff could lift or carry twenty pounds occasionally and ten pounds frequently, stand/walk/sit about six hours in an eight hour workday, with unlimited push/pull activities. The doctor opined that Plaintiff could occasionally climb ramps, stairs, ladders, ropes, and scaffolds, balance, stoop, kneel, crouch, or crawl, but she had no manipulative, visual, or communicative limitations. The doctor further opined that Plaintiff had no

environmental limitations except that she should avoid extreme cold and wetness. Dr. Jackson determined that Plaintiff was partially credible.

On August 10, 2010 occupational therapist Deborah Phillips evaluated Plaintiff for the first time for the purpose of completing a Fibromyalgia Residual Functional Capacity Questionnaire. (TR 405-09). Deborah Phillips checked boxes stating that Plaintiff had numbness and tingling, anxiety, panic attacks, subjective swelling, muscle weakness, and multiple tender points among other things. She noted that Plaintiff could walk one half city block without rest or severe pain, sit twenty minutes at a time before needing to stand, stand ten minutes before needing to sit, sit/stand/walk less than two hours in an eight hour workday, and she would need to walk for a five minute period every thirty minutes in an eight hour workday. (TR 407). She documented that Plaintiff would need to take unscheduled ten minute breaks every thirty minutes in an eight hour workday to lie down or sit quietly. She also noted that Plaintiff would need to elevate her legs to seat level fifty percent of her workday when sitting. Deborah Phillips checked boxes noting that Plaintiff could rarely lift less than ten pounds, rarely twist or climb stairs, never stoop/crouch/squat/climb ladders, and only occasionally look up or down or hold her head in a static position. She indicated that Plaintiff had significant limitations with reaching, handling or fingering, and would likely be absent from work as a result of her impairments more than four days per month. She indicated that Plaintiff's movements were observed to match those of others with fibromyalgia and concluded that Plaintiff was incapable of even low stress jobs.

### IV.     VOCATIONAL EXPERT TESTIMONY

The VE testified that Plaintiff's past relevant employment as a home health aide, residential aide, and adult foster care aide consisted of heavy, semiskilled work; past work as a telemarketer

consisted of sedentary unskilled work; past work as a job coach was light semiskilled work; and work as a cashier and stocker was medium, unskilled work. (TR 75-76). The ALJ asked the VE to testify whether jobs were available for an individual with Plaintiff's age, education, and past work experience who requires the following limitations: (a) she cannot lift or carry more than twenty pounds occasionally and ten pounds frequently; (b) she can sit/stand/or walk for at least six hours in an eight hour workday; (c) she requires a sit/stand option that allows her to change position every thirty to forty-five minutes; (d) she can never climb ladders, ropes, or scaffolds and can only occasionally climb ramps or stairs; (e) she can occasionally balance, stoop, kneel, crouch, crawl, squat, bend, twist, turn at the waist, and reach overhead with either upper extremity; and (f) she would need to avoid concentrated exposure to extreme cold or wetness with no use of air powered torque, pneumatic, or vibratory tools.

     The VE testified that the hypothetical individual could perform Plaintiff's past job as a job coach, although that was part-time work. (TR 76). The VE further testified that if the individual was capable of performing sustained work eight hours per day, forty hours per week she would be capable of performing light jobs with a sit/stand option including surveillance system monitor jobs, small parts assembler, inspector/examining/packing jobs, charge account clerk, telephone clerk, and machine feeder jobs, comprising 27,500 available jobs in the lower half of the lower peninsula of Michigan. (TR 75-77). The ALJ modified the above hypothetical to inquire into sedentary positions with a sit/stand option that would permit an individual to be limited to lifting ten pounds occasionally and less than ten pounds frequently, and standing and walking two hours in an eight hour workday. (TR 77). The VE testified that this individual would be able to perform the same jobs previously identified but at a sedentary level, comprising 13,250 jobs.

The VE further testified that there would be no available jobs for an individual who would have difficulty persisting at the work effort for a full eight hour day without the need for frequent, unscheduled rest breaks or the need to recline or lie down periodically during the course of the day. (TR 78). The VE further testified that if the individual was deemed to be fully credible or if she missed more than two days of work each month there would be no competitive work available. (TR 78-79).

## V.  ADMINISTRATIVE LAW JUDGE'S DETERMINATION

The ALJ found that although Plaintiff has not engaged in substantial gainful activity since her application date of February 19, 2008, and suffers from the severe impairments of fibromyalgia, tendinitis, bilateral shoulders, degenerative disc disease of the cervical and lumbar spine, degenerative joint disease, bilateral knees, and obesity, she did not have an impairment or combination of impairments that meets or equals the Listing of Impairments. (TR 28-29).

The ALJ concluded that Plaintiff has the residual functional capacity (RFC) to perform sedentary work, except that she can lift or carry ten pounds occasionally and less than ten pounds frequently; can stand or walk up to two hours in an eight hour workday; can sit at least six hours in an eight hour workday; and requires a sit/stand option that will enable her to change position every thirty to forty-five minutes. Additionally, Plaintiff cannot climb ladders, ropes, or scaffolds, and can only occasionally climb ramps or stairs, balance, stoop, kneel, crouch, crawl, squat, or bend, twist, or turn at the waist. Plaintiff can only occasionally reach overhead with either upper extremity, must avoid concentrated exposure to extreme cold or wetness, and can never use air, power, torque, pneumatic, or vibratory tools. (TR 30-34). The ALJ concluded that because Plaintiff is not capable of performing her past relevant work, but could perform jobs that exist in significant numbers in the

national economy, Plaintiff is not under a disability as defined in the Social Security Act. (TR 34-36).

## VI. LAW AND ANALYSIS

### A. Standard Of Review

Pursuant to 42 U.S.C. § 405(g), the district court has jurisdiction to review the Commissioner's final decisions. Judicial review under this statute is limited to determining whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner's decision employed the proper legal standards. *Walters v. Comm'r*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is more than a scintilla but less than a preponderance; it is " 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole. *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir. 1999).

### B. Framework for Social Security Disability Determinations

Plaintiff's Social Security disability determination was made in accordance with a five step sequential analysis. In the first four steps, Plaintiff was required to show that:

1. she was not engaged in substantial gainful employment; and
2. she suffered from a severe impairment; and

>3. the impairment met or was medically equal to a "listed impairment;" or
>4. she did not have the residual functional capacity to perform her past relevant work.

20 C.F.R. § 416.920(a)-(f). If Plaintiff's impairments prevented her from doing her past relevant work, the Commissioner, at step five, would consider Plaintiff's RFC, age, education and past work experience to determine if she could perform other work. If she could not, she would be deemed disabled. 20 C.F.R. § 416.920(g). The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her*, 203 F.3d at 391. To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [plaintiff] has the vocational qualifications to perform specific jobs." *Varley v. Sec'y of Health & Human Servs.,* 820 F.2d 777, 779 (6th Cir. 1987) (citation omitted). This "substantial evidence" may be in the form of vocational expert testimony in response to a hypothetical question if the question accurately portrays the plaintiff's physical and mental impairments. *Id.* (citations omitted).

**C.     Analysis**

Plaintiff argues that the ALJ erroneously dismissed Plaintiff's subjective complaints and symptoms common to fibromyalgia because they were not corroborated by objective medical evidence and rejected Plaintiff's claim of disability without supporting substantial evidence. She claims that the most reliable evidence of her ongoing capabilities came from the Fibromyalgia Residual Functional Capacity Questionnaire completed by occupational therapist Deborah Phillips.

The Sixth Circuit has recognized that the symptoms of fibromyalgia are largely subjective and not readily verifiable by objective medical evidence. *Rogers v. Comm'r,* 486 F.3d 234, 243-44 (6th Cir. 2007). Indeed, fibromyalgia patients frequently exhibit normal muscle strength and

11

neurological reactions and have a full range of motion, yet may at the same time experience severe musculoskeletal pain. *Id.* (citations omitted). Because objective tests are of little relevance in determining the existence and severity of fibromyalgia, the process for diagnosing fibromyalgia involves testing for tenderness in focal points and ruling out other conditions. *Id.* at 244.

> [F]ibromyalgia, also known as fibrositis[,] is a common, but elusive and mysterious disease, much like chronic fatigue syndrome, with which it shares a number of features. Its cause or causes are unknown, there is no cure, and, of greatest importance to disability law, its symptoms are entirely subjective. There are no laboratory tests for the presence or severity of fibromyalgia. The principal symptoms are "pain all over," fatigue, disturbed sleep, stiffness, and-the only symptom that discriminates between it and other diseases of a rheumatic character-multiple tender spots, more precisely 18 fixed locations on the body (and the rule of thumb is that the patient must have at least 11 of them to be diagnosed as having fibromyalgia) that when pressed firmly cause the patient to flinch.

*Huffaker v. Metro. Life Ins. Co.,* 271 Fed. Appx. 493, 500 n.2 (6th Cir. 2008) (quoting *Hawkins v. First Union Corp. Long-Term Disability Plan,* 326 F.3d 914, 916 (7th Cir.2003)). "[A] diagnosis of fibromyalgia does not automatically entitle [a claimant] to disability benefits...." *Vance v. Comm'r,* 260 Fed. Appx 801, 806 (6th Cir. 2008). Indeed, " '[s]ome people may have a severe case of fibromyalgia as to be totally disabled from working ... but most do not and the question is whether [the claimant] is one of the minority.' " *Id.* (quoting *Sarchet v. Chater,* 78 F.3d 305, 307 (7th Cir. 1996)).

While the subjective nature of fibromyalgia does not lend itself well to objective medical verification, the ALJ did not rely solely on the lack of objective medical support in determining that Plaintiff was not disabled. Without a doubt the ALJ thoroughly reviewed the objective evidence and concluded that the objective findings failed to provide strong support for Plaintiff's allegations of disabling symptoms and limitations. Yet the ALJ also acknowledged Plaintiff's subjective complaints of pain and distress associated with her fibromyalgia and symptoms. In addition, the

ALJ considered Plaintiff's functional capabilities as determined by clinician observations and by her ability to perform activities of daily living. The ALJ noted that Plaintiff was able to perform some household chores and do the cooking, albeit slowly. She was able to grocery shop at least twice a month with her mother, drive her children to school, and attend her children's school activities which included football, softball, and basketball games, track meets, and band concerts. The ALJ discussed medical evidence showing that Plaintiff had only mild difficulty getting on and off the examination table, mild problems performing heel and toe walking, and no trouble stooping to pick an object up off the floor. In addition, the ALJ reviewed and afforded considerable weight to the Physical Residual Functional Capacity Assessment of Dr. William Jackson, which limited Plaintiff's functional capabilities but stopped short of finding that Plaintiff was totally disabled.

In contrast to Plaintiff's argument that the ALJ disregarded Deborah Phillips assessment, the ALJ noted that he was well aware of the report from occupational therapist Deborah Phillips, which found work preclusive limitations. However, the ALJ decided not to afford Deborah Phillips' opinion significant weight because she was not a treating physician and her check-the-box assessment was not supported by the medical evidence or explained well and justified by Deborah Phillips herself. Indeed, Deborah Phillips checked boxes indicating among other things that Plaintiff suffered panic attacks, subjective swelling, a physical need to elevate her feet to seat level fifty percent of her workday when sitting, and she could only occasionally look up or down or hold her head in a static position. These factors among others provided the basis for Phillips' assessment that Plaintiff was incapable of even low stress jobs. Yet Phillips did not indicate how she arrived at these or her many other conclusions, nor did she point to any evidence, subjective or objective, that supported her very restrictive findings.

The undersigned finds that the ALJ properly evaluated the evidence relating to Plaintiff's fibromyalgia. He then reasonably accounted for Plaintiff's functional limitations by restricting her to a limited range of sedentary work with a sit/stand option and other well-defined restrictions. The ALJ posed accurate hypothetical questions to the VE that accounted for Plaintiff's credible limitations. He then accepted the VE's testimony that Plaintiff was capable of performing a significant number of jobs that exist in the national economy. The ALJ's conclusion is supported by substantial evidence and should not be disturbed.

**<u>REVIEW OF REPORT AND RECOMMENDATION</u>**:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and

labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Dated: January 14, 2013            s/ Mona K. Majzoub
                                                      MONA K. MAJZOUB
                                                    UNITED STATES MAGISTRATE JUDGE

**PROOF OF SERVICE**

I hereby certify that a copy of this Report and Recommendation was served upon Counsel of Record on this date.

Dated: January 14, 2013            s/ Lisa C. Bartlett
                                                      Case Manager